UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **JEFFERY PHILLIPS, WAYNE COTTRELL, DENISE SMITH,** and **EMILY HAUKE** individually, and on behalf of those similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>**VILLAGE OF NEW RICHMOND, OHIO,** and **DATA TICKET, INC.**,<br><br>    Defendants. | CASE NO.   19-cv-611<br><br>JUDGE:<br><br>MAGISTRATE JUDGE:<br><br>**PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs JEFFERY PHILLIPS, WAYNE COTTRELL, DENISE SMITH, and EMILY HAUKE (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through Counsel at DANNLAW and ZIMMERMAN LAW OFFICES, P.C., and complain against Defendants VILLAGE OF NEW RICHMOND, OHIO ("Village") and DATA TICKET, INC. ("DTI"), as follows:

## PARTIES

1. Plaintiff Jeffery Phillips is an adult presently residing in New Richmond, Ohio in Clermont County, Ohio.

2. Plaintiff Wayne Cottrell is an adult presently residing in Moscow, Ohio in Clermont County, Ohio.

3. Plaintiff Denise Smith is an adult presently residing in Amelia, Ohio in Clermont County, Ohio.

4. Plaintiff Emily Hauke is an adult presently residing in New Richmond, Ohio in Clermont County, Ohio.

5. Defendant Village of New Richmond, Ohio is an Ohio municipality with a principal location of 102 Willow Street, New Richmond, Ohio 45157. The Village is a "person" under 42 U.S.C. § 1983, and at all times relevant to this case acted under color of law.

6. Defendant Data Ticket, Inc. is a corporation incorporated under the laws of the State of California, with its principal place of business located at 2603 Main Street, Suite 300, Irvine, California 92614. DTI is not registered to do business with the Ohio Secretary of State. DTI advertises that it "help[s] cities, counties, universities, colleges, and other agencies with records management and payment collection on outstanding debts. A California company, serving our clients since 1989, we work with our clients to tailor solutions to meet their specific needs. Reach out to see how we can help." *See Data Ticket, Inc.*, DATA TICKET INC., available at: www.dataticket.com/home.html (last visited July 22, 2019).

7. DTI also "helps" municipalities collect tickets, such as those issued by the Village, through its website, *www.citationsprocessingcenter.com*. DTI "helps" the Village by maintaining the Citations Processing Center – New Richmond, which is a collection P.O. Box in Beverly, Massachusetts.

8. Each Plaintiff has been assessed civil penalties as a result of the operation of the automated traffic enforcement system in the Village, which was not authorized pursuant to R.C. § 4511.10.

**JURISDICTION AND VENUE**

9. Jurisdiction of claims is conferred by 28 U.S.C. §§ 1331 and 1343, as this action seeks redress for the deprivation of rights secured by the United States Constitution.

10. The Court has supplemental jurisdiction over Plaintiffs' state court claims pursuant to 28 U.S.C. § 1367. Pursuant to R.C. § 2721.02(A), this Court is authorized to grant the relief

sought, and declare rights, status, and other legal relations whether or not further relief is or could be claimed.

11. Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as a substantial portion of the events that form the basis of this Complaint occurred in the District, and Defendants conducted activity that gave rise to the claim for relief in the District.

## STATEMENT OF FACTS

12. Like many Ohio municipalities that have struggled to obtain fiscal solvency due to the ongoing reductions in disbursements from the Local Government Fund from the State of Ohio, the Village decided in 2018 to explore the possibility of installing automated traffic enforcement systems ("speed cameras").

13. The Village first read Ordinance 2018-14 "AN ORDINANCE AUTHORIZING THE ENACTMENT OF A VILLAGE SPEED CAMERA ENFORCEMENT PROGRAM AND A CONTRACT WITH SENSYS GATSO USA, INC., WITH RESPECT TO SUCH PROGRAM" ("Ordinance 2018-14") during the Village's June 25, 2018 Council meeting. *See* Ordinance 2018-24, attached hereto as Exhibit 1.

14. The Village adopted Ordinance 2018-14 on July 24, 2018. *Id.*

15. Ordinance 2018-14 was enacted for the purpose of installing automated speed cameras on U.S. Highway 52, which runs through the municipal limits of the Village.

16. U.S. Highway 52 is a highway under the jurisdiction of the Ohio Department of Transportation ("ODOT").

17. On July 20, 2018—four days *before* the Village adopted Ordinance 2018-14—ODOT sent a letter to the Village Administrator explicitly informing the Village that "The Director [of ODOT] has determined to . . . not permit placement of speed enforcement cameras or related

3

signage in ODOT right of way or on ODOT owned structures." *See* July 20, 2018 Letter from ODOT ("July Letter"), attached hereto as <u>Exhibit 2</u>.

18. On September 11, 2018, ODOT sent the Village a second letter regarding, *inter alia*, permanently affixed speed cameras. *See* September 11, 2018 ODOT Letter ("September Letter"), attached hereto as <u>Exhibit 3</u>. Specifically, the September Letter stated that, under Ohio law, fixed speed cameras require ODOT approval, and that ODOT "will not be granting permits for fixed [speed] cameras within ODOT rights of way. *See id*. Moreover, the September Letter stated that "any current installation must be removed by the [Village] on or before September 30, 2018." *See id.*

19. On September 11, 2018, the same day that ODOT sent the Village the September Letter, the Village Council met for a Village Council meeting. During that meeting, the Village Administrator notified the Village Council that, despite the fact that both the June Letter and September Letter explicitly stated that ODOT would not permit fixed speed cameras on ODOT rights of way within the Village, ODOT "would allow signage in the right of way." *See Council Meeting* Notes, attached hereto as <u>Exhibit 4</u>.

20. Further, in Spring 2019, despite ODOT's repeated statements prohibiting the installation of fixed speed cameras, Defendants installed two permanently-affixed speed cameras on Village-owned utility poles within municipal limits of the Village: 1) at the intersection of U.S. Highway 52 and Front Street ("Front St. Camera"), and 2) near the intersection of U.S. Highway 52 and Adamson ("Adamson Camera") (collectively, with the Front St. Camera, the "Speed Cameras"). Both Speed Cameras recorded alleged speed limit violations on U.S. Highway 52.

21. Between May 1, 2019 and May 31, 2019, Defendants issued "warnings" for alleged speed limit violations captured by the Speed Cameras. The warnings did not fine alleged violators any amount, but instead warned the registered owner of the vehicle of the alleged violation.

22. Beginning June 1, 2019, Defendants began issuing citations for alleged speed limit violations using the Speed Cameras ("Citations").

23. However, Defendants did not obtain authorization from the Director of ODOT to install the Speed Cameras, as required by R.C. § 4511.10. Thus, all of the Citations are invalid.

24. On July 1, 2019, Plaintiff Phillips received a Citation from Defendants notifying him that the Adamson Camera had recorded an alleged speed limit violation on June 25, 2019, for allegedly traveling 64 m.p.h in a 50 m.p.h. zone. A copy of Phillips's Citation is attached hereto as <u>Exhibit 5</u>.

25. Phillips' Citation imposed a fine in the amount of $85.00. The Citation issued to Phillips states that payment is due by July 31, 2019. Phillips has not paid the Citation.

26. On July 1, 2019, Plaintiff Cottrell received a Citation from Defendants notifying him that the Adamson Camera had recorded an alleged speed limit violation on June 27, 2019 for allegedly traveling 62 m.p.h. in a 50 m.p.h. zone. A copy of Cottrell's Citation is attached as <u>Exhibit 6</u>.

27. Cottrell's Citation imposed a fine in the amount of $85.00. The Citation issued to Cottrell states that payment is due by July 31, 2019. Cottrell has not paid the Citation.

28. On July 1, 2019, Plaintiff Smith received a Citation from Defendants notifying her that the Adamson Camera had recorded an alleged speed limit violation on June 1, 2019, for allegedly traveling 61 m.p.h. in a 50 m.p.h. zone. A copy of Smith's Citation is attached as <u>Exhibit 7</u>.

29. Smith's Citation imposed a fine in the amount of $85.00. The Citation issued to Smith states that payment is due by July 31, 2019. Smith has not paid the Citation.

30. On June 27, 2019, Plaintiff Hauke received two Citations from the Defendants. The first Citation from the Defendants notified her that the Adamson Camera had recorded an alleged speed limit violation on June 4, 2019, for traveling 62 m.p.h. in a 50 m.p.h. zone. The second Citation from the Defendants notified her that the Adamson Camera had recorded an alleged speed limit violation on June 6, 2019, for traveling 63 m.p.h. in a 50 m.p.h. zone. A copy of Hauke's Citations are attached as <u>Exhibit 8</u>.

31. Hauke's Citations each imposed a fine in the amount of $85.00, or $170.00 total. Each of the Citations issued to Hauke states that payment is due by July 27, 2019. Hauke has not paid either Citation.

32. On July 18, 2019, the Clermont Sun published an article titled "New Richmond Suspends Speed Camera Program." The article contains non-refuted information that, since the Speed Cameras were installed, Defendants issued 621 Citations in June 2019.

## **CLASS ACTION ALLEGATIONS**

33. **Class Definition**: Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of themselves and a nationwide class of similarly situated individuals (the "Class"), defined as follows:

> All persons who were issued a citation from either the Front St. Camera or the Adamson Camera for allegedly traveling in excess of the posted speed limit on and after June 1, 2019.

34. Plaintiffs propose to represent a subclass of individuals and entities ("Subclass 1"), defined as follows

> All persons who were issued a citation from either the Front St. Camera or the Adamson Camera for allegedly traveling in excess of the posted speed

limit on and after June 1, 2019, and who paid any fines, penalties, fees, or other charges in relation to the citation.

35. Plaintiffs additionally propose to represent a subclass of individuals and entities ("Subclass 2"), defined as follows:

> All persons who were issued a citation from either the Front St. Camera or the Adamson Camera for allegedly traveling in excess of the posted speed limit on and after June 1, 2019, and who have not paid any fines, penalties, fees, or other charges in relation to the citation.

36. Excluded from the Class, Subclass 1, and Subclass 2 are: (1) Defendants, Defendants' agents; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

37. On information and belief, the proposed Class and Subclasses consist of hundreds of individuals. Therefore, the Class and Subclasses are so numerous and dispersed that joinder is impracticable. The exact number of Class and Subclass members is presently unknown, can only be ascertained through discovery, and can easily be identified through Defendants' records or by other means.

38. All members of the Class and Subclasses have been subject to and affected by a uniform course of conduct committed by Defendants: specifically, receiving at least one automated speed enforcement Citation from either the Front St. Camera or the Adamson Camera, for allegedly traveling in excess of the posted speed limit, despite the fact that neither Speed Camera was permitted to be installed by ODOT. There are questions of law and fact common to the proposed Class and Subclasses that predominate over individual questions. These include, but are not limited to, the following:

7

a. Whether the Front St. Camera and/or the Adamson Camera were installed and operated in violation of R.C. § 4511.10;

b. Whether the Village denied Plaintiffs and Class members their rights protected by the United States Constitution;

c. Whether the Village denied Plaintiffs and Class members their rights protected by the Ohio Constitution;

d. Whether Defendants have been unjustly enriched by collection and retaining the penalties, fees, and other charges that have been paid by Plaintiffs and members of the Class and Subclass 1;

e. Whether Defendants should be ordered under principles of equity to disgorge all payments made to them by Plaintiffs and members of the Class and Subclass 1; and

f. Whether Defendants should be ordered under principles of equity to dismiss with prejudice all tickets issued to all members of the Class, Subclass 1, and Subclass 2.

39. In all relevant respects, Plaintiffs are typical of those of the Class members in that Plaintiffs, like the other members of the Class, were improperly issued Citations for alleged speed violations from the Speed Cameras.

40. Plaintiffs will adequately protect the interests of the Class, and do not have any interests adverse to the Class.

41. With the help of qualified counsel who are experienced in such litigation, Plaintiffs are capable of adequately representing the Class for any and all purposes in that Plaintiffs, like the other members of the Class, received Citations from the Speed Cameras, which were not approved by ODOT, as is required by Ohio law.

42. A class action is the superior method for fairly and efficiently adjudicating the controversy. The prosecution of separate actions creates a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. Further, the expense and

burden of litigation would make it impractical or impossible for proposed Class and Subclass members to prosecute their claims individually.

## COUNT ONE:
**(DUE PROCESS VIOLATION, 42 U.S.C. § 1983; ATTORNEY'S FEES, 42 U.S.C. § 1988)**
**(On behalf of the Class, Subclass 1, and Subclass 2, and against the Village)**

43. Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 42, in their entirety, as if fully rewritten herein.

44. At all relevant times, there was in full force United States Code, Title 43, Section 1983. Section 1983 provides that: "every person who, under color of [law] of any State . . . subjects, or causes to be subjected, any [person] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

45. The Fourteenth Amendment of the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

46. The Village has an unconstitutional policy, practice, and custom of using automated traffic enforcement systems—that were installed, maintained, and operated without permission from ODOT—to issue Citations imposing civil penalties.

47. R.C. § 4511.093(A) provides, "A local authority may utilize a traffic law photo-monitoring device for the purpose of detecting traffic law violations."

48. R.C. § 4511.097(A) provides, "A traffic law violation for which a ticket is issued by a local authority [at a time subsequent to the violation] is a civil violation."

49. R.C. § 4511.10 provides, "The department of transportation may place and maintain traffic control devices . . . upon all state highways . . . . No local authority shall place or maintain

9

any traffic control device upon any highway under the jurisdiction of the department except by permission of the director of transportation."

50. The Village's conduct as described herein violates 42 U.S.C. § 1983 because the Village, under color of statutes, ordinances, regulations, customs, and usages of the State of Ohio, deprived Plaintiffs and members of Class and Subclasses of their property without due process of law by issuing Citations for alleged violations recorded by the Front St. Camera and the Adamson Camera, without proper authorization from the Ohio Dept. of Transportation.

51. There exists no adequate post-deprivation remedy for Plaintiffs and the members of Class because Defendants continue to seek enforcement of the Citations.

52. As a direct and proximate result of such wrongful actions, as described herein, Plaintiffs and members of the Class and Subclasses were deprived of their right to due process.

53. Pursuant to 42 U.S.C. § 1983, Plaintiffs and members of the Class and Subclass 1 are entitled to recover compensatory and punitive damages for the Village's violations of their Fourteenth Amendment rights.

54. Plaintiffs and members of the Class and Subclasses are entitled to recover reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

**COUNT TWO:**
**(DECLARATORY JUDGMENT - VIOLATION OF OHIO CONSTITUTION)**
**(On behalf of the Class, Subclass 1, and Subclass 2 and against the Village)**

55. Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 42, in their entirety, as if fully rewritten herein.

56. Section 6, Article 1 of the Ohio Constitution guarantees that every person injured in its lands, goods, person, or reputation shall have remedy by "due course of law".

57. The decision of the Mayor, City Council, Village Administration and Police Chief of New Richmond whether intentional, negligent, or otherwise to allow Citations to be written from the Speed Cameras and enforce those Citations when neither Speed Camera was authorized by ODOT violates the Ohio Constitution's guarantee of "due course of law" by providing improper Citations which impose penalties, fines, and other penalties upon Plaintiffs, all members of the Class and Subclasses in excess of what is statutorily enforceable.

58. Pursuant to R.C. § 2721.02, Plaintiffs and members of the Class, Subclass 1, and Subclass 2 are entitled to a declaration that all Citations issued related to alleged speed limit violations recorded by either Speed Camera are invalid and unenforceable.

59. The current administrative procedures maintained by Defendants violate "due course of law" because they do not provide a recourse for an improper Citation that imposes penalties, fines, and other fees upon Plaintiffs and Class and Subclass members in excess of what is statutorily enforceable. Plaintiffs and Class and Subclass members have no meaningful procedure for notice and opportunity to challenge the Citations.

## COUNT THREE:
### (EQUITABLE RESTITUTION)
**(On behalf of the Class and Subclass 1, and against Defendants)**

60. Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 42, in their entirety, as if fully rewritten herein.

61. The Citations issued to Plaintiffs and Class and Subclass members for alleged speed limit violations issued by Speed Cameras that were not permitted by ODOT violates Ohio Law. Therefore, the Citations are invalid and unenforceable.

62. Upon information and belief, Defendants have received thousands of dollars in revenue by issuing the Citations to Plaintiffs and Class and Subclass members.

63. Plaintiffs and all members of the Class and Subclass 1 have been adversely affected by the issuance of Citations though the payment of the civil penalties, late fees, collection fees, and interest thereon.

64. Defendants improperly collected money from Plaintiffs and members of the Class and Subclass 1 for invalid tickets.

65. As a result, Defendants have been unjustly enriched.

66. Defendants have received a benefit which it would be unconscionable for them to retain.

67. The Village is not entitled to sovereign immunity as suits seeking the return of funds wrongfully collected or held by governmental actors may be maintained in equity.

68. Ohio law permits a Plaintiff and Class and Subclass members to obtain a refund of money that a governmental agency has collected, and correct the unjust enrichment by Defendants.

69. Defendants should not be permitted to unjustly retain the penalties, fees, and other charges that have been paid by Plaintiffs and members of the Class and Subclass 1. Equity requires that Defendants be ordered to disgorge all such payments made to them and to those acting on their behalf by Plaintiffs and members of the Class and Subclass 1, plus interest.

### COUNT FOUR
### (CIVIL CONSPIRACY)
**(On behalf of the Class, Subclass 1, and Subclass 2, and against all Defendants)**

70. Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 42, in their entirety, as if fully rewritten herein.

71. Under Ohio law, the elements of civil conspiracy are (1) a malicious combination of two or more persons; (2) causing injury to person or property; (3) the existence of an unlawful act which is independent from the conspiracy itself; and, (4) damages. *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio 1996).

72. In a malicious combination, DTI and the Village engaged in a civil conspiracy to cause injury to Plaintiffs and Class and Subclass members by engaging in a common scheme to generate revenue through the systematic issuance of the unlawful Citations.

73. Through the fines collected from the Citations, DTI and the Village have injured and caused Plaintiffs and Class and Subclass members to suffer economic and non-economic damages as a direct and proximate cause of their malicious conspiring to issue the Citations.

74. Defendants engaged in unlawful acts independent from the conspiracy by issuing the Citations to Plaintiffs and Class and Subclass members, recorded by Speed Cameras that are not permitted by Ohio law, misrepresenting that the Citations were enforceable, and collecting money from Plaintiffs and Class and Subclass members from the Citations.

WHEREFORE, Plaintiffs Jeffery Phillips, Wayne Cottrell, Denise Smith, and Emily Hauke, individually, on behalf of the Class, Subclass 1, and Subclass 2, respectfully request this Court grant the following relief against Defendants:

A. For a finding that this action satisfies the prerequisites for maintenance as a Class Action and an Order certifying the Class, Subclass 1, and Subclass 2 as defined herein;

B. For an Order designating Plaintiffs as representatives of the Class, Subclass 1, and Subclass 2 as defined herein;

C. For an Order designating Plaintiffs' Counsel as Class Counsel for the Class, Subclass 1, and Subclass 2 as defined herein;

D. For a declaration that all Citations issued to Plaintiffs, Subclass 1, and Subclass 2 members are invalid;

E. For a declaration that all Citations issued to Plaintiffs, Subclass 1, and Subclass 2 members from the Speed Cameras are invalid;

F. For an award of all amounts collected by the Defendants or their agents to be returned to the Plaintiffs and Class and Subclass 1 members;

G. For an award of punitive damages against Defendants;

H. For an award of attorney's fees and costs, including interest thereon, as allowed or required by law; and

I. Such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Marc E. Dann
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Michael A. Smith, Jr. (0097147)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
*notices@dannlaw.com*

Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
Nickolas J. Hagman (*pro hac vice* anticipated)
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020
Facsimile: (312) 440-4180
*firm@attorneyzim.com*

*Attorneys for Plaintiffs and the Class*

**JURY DEMAND**

Plaintiffs hereby request a trial by jury on all issues so triable.

/s/ Marc E. Dann
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Michael A. Smith, Jr. (0097147)
Dann Law
